21-2931-cr
*United States v. Gonzalez, Jr.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of September, two thousand twenty-three.

Present:
        DENNY CHIN,
        WILLIAM J. NARDINI,
        ALISON J. NATHAN,
            *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

        *Appellee*,

        v.                                        21-2931-cr

EFRAIN GONZALEZ, JR.

        *Defendant-Appellant*.[*]

_____

_____

> [*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

1

For Appellee:                          JONATHAN E. REBOLD (Stephen J. Ritchin, *on the brief*), Assistant United States Attorneys, of counsel, for Damian Williams, United States Attorney for the Southern District of New York, New York, NY

For Defendant-Appellant:               AMELIA COURTNEY HRITZ (Jonathan P. Bach, Daniel J. O'Neill, *on the brief*), Shapiro Arato Bach LLP, New York, NY

Appeal from a judgment of the United States District Court for the Southern District of New York (P. Kevin Castel*, District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Efrain Gonzalez, Jr. appeals from an order of the United States District Court for the Southern District of New York (P. Kevin Castel, *District Judge*), entered on November 10, 2021, granting the government's motion for a preliminary order of forfeiture of substitute assets. Gonzalez, a former New York State Senator, pleaded guilty to mail fraud and conspiracy to commit mail fraud, federal program fraud, and honest services wire fraud. The district court sentenced Gonzalez to 84 months of imprisonment and entered an order of forfeiture. Following the government's unsuccessful attempt to locate the proceeds of the offenses, the district court granted its motion for forfeiture of substitute assets, including Gonzalez's interest in his pension and two automobiles. This appeal followed. We assume the parties' familiarity with the case.

In reviewing an order of forfeiture, we review a district court's legal conclusions *de novo* and its factual findings for clear error. *United States v. Annabi*, 746 F.3d 83, 85 (2d Cir. 2014).

2

For arguments that Gonzalez has presented for the first time on appeal, we review only for plain error under Federal Rule of Criminal Procedure 52(b). *See United States v. Kirk Tang Yuk*, 885 F.3d 57, 75–76 (2d Cir. 2018). Under the plain error standard, we will disturb the district court's judgment only if an appellant demonstrates that: "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (cleaned up).

Gonzalez first argues that the government failed to establish the statutory requirements for forfeiture of substitute assets under 21 U.S.C. § 853(p). This argument, which Gonzalez raises for the first time on appeal, is reviewable only for plain error. § 853(p) allows for the forfeiture of substitute assets where the government establishes that "as a result of any act or omission of the defendant," the property subject to criminal forfeiture "cannot be located upon the exercise of due diligence." In support of its motion for forfeiture of substitute assets, the government submitted the sworn declaration of a postal inspector explaining that he had conducted an investigation to look for these assets and that "despite the exercise of due diligence . . . the Government has been unable to locate the proceeds of the defendant's offenses . . . . [and] has located only the Subject Pension and Subject Vehicles as assets of the defendant that can be used to satisfy the Money Judgment." App'x at 174. Gonzalez did not argue that the proceeds of his crimes were still in his possession, and the postal inspector's declaration was sufficient to show due diligence. Granted, the government's motion did not directly address the statutory requirement that it was

3

unable to locate the criminal proceeds "as a result of any act or omission" of Gonzalez. 21 U.S.C. § 853(p). But we can affirm the district court's forfeiture order on any basis supported by the record. *See United States v. Simard*, 731 F.3d 156, 161 (2d Cir. 2013). The record establishes that Gonzalez had burned through much of the criminal proceeds to pay for services such as club membership fees and rent payments, making it difficult to locate any remaining property that could be traced to the criminal proceeds. Therefore, it was not plain error for the district court to find that the statutory requirements for substitute asset forfeiture under § 853(p) were met.

Gonzalez next argues that the district court erred in ordering forfeiture of his interest in his New York state pension because the New York Constitution provides that the benefits of a state pension "shall not be diminished or impaired," N.Y. Const. art. V, § 7(a).[†] Gonzalez recognizes that this Court held in *United States v. Stevenson* that federal law preempts New York law regarding the propriety of forfeiture of "contributions to or benefits from a state pension," 834 F.3d 80, 87 (2d Cir. 2016), but he contends that the holding does not apply to his future pension disbursements. And if *Stevenson* does apply, he argues in the alternative that this Court should reconsider *Stevenson*. Because Gonzalez did not argue against the application of *Stevenson* in the district court, we review this second argument only for plain error. We conclude that the district court did not commit any error, much less plain error, in ordering forfeiture of Gonzalez's state pension. Under the Supremacy Clause, state law is preempted "when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Silkwood v. Kerr-McGee*

---

[†] For the purposes of this appeal, we assume that Gonzalez reads New York law correctly.

4

*Corp.*, 464 U.S. 238, 248 (1984) (citation omitted). We followed this principle in *Stevenson*, holding that "Article V, Section 7 of the New York State Constitution is preempted to the extent that it would prevent forfeiture of [defendant's] contributions to *or benefits from* a state pension." 834 F.3d at 87 (emphasis added). Here, Gonzalez argues that *Stevenson* involved the forfeiture only of unvested pension contributions, and so we should narrow or reconsider its holding. Neither choice is open to us. It is a longstanding rule that a panel of our Court is "bound by the decisions of prior panels until such times as they are overruled either by an en banc panel of our Court or by the Supreme Court." *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004). Gonzalez argues that the Supreme Court's decision in *Honeycutt v. United States,* 581 U.S. 443 (2017), casts doubt on *Stevenson*. But *Honeycutt* merely highlights that the plain text and structure of § 853 are clear in that "Congress provided just one way for the Government to recoup substitute property when the tainted property itself is unavailable—the procedures outlined in § 853(p)." 581 U.S. at 483. That holding does not undermine *Stevenson*. And even if we were not bound by *Stevenson*, Gonzalez offers no persuasive rationale to reconsider its holding. Congress has clearly set forth a federal forfeiture policy that is designed to prevent an offender from reaping the benefits of criminal activity, whether by retaining the proceeds of an offense or by spending them down while retaining other legitimately obtained assets. Assuming Gonzalez is correct that the New York Constitution would bar forfeiture of his pension, we conclude that § 853(p) would preempt it here.

Lastly, Gonzalez argues that to the extent his state pension benefits are subject to forfeiture under *Stevenson*, applying the holding of *Stevenson* here would violate Gonzalez's due process

5

rights because *Stevenson* enlarged the meaning of § 853(p) in a way that was unforeseeable at the time that Gonzalez committed his crimes and pled guilty. To this end, he relies on the proposition that "[a]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids." *Marks v. United States*, 430 U.S. 188, 192 (1977). But as the district court correctly observed, *Stevenson* was far from unforeseeable. Earlier decisions of "'our sister circuits'" had held that "'various provisions of state law are preempted by federal forfeiture law.'" App'x at 222 (quoting *Stevenson*, 834 F.3d at 87). The language of § 853(p) is capacious and admits of no exceptions about what assets can be treated as forfeitable substitute assets. Indeed, Gonzalez had fair notice through both the statute and the indictment that, if needed, the government could seek any substitute property if the proceeds of his offense could not be traced. Accordingly, the application of § 853(p) to Gonzalez's pension did not violate his due process rights.

We have considered all of Gonzalez's remaining arguments and find them unpersuasive. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

6